THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT W. STEPHENS, Appellant.

County Court, Yates County, February 28, 1967.

*Valent, Callanan & Ruger* (*Henry Valent* of counsel), for appellant. *Frederick M. Hunt, District Attorney,* for respondent.

LYMAN H. SMITH, J. This is an appeal from a judgment of conviction for speeding (Vehicle and Traffic Law, § 1180, subd. [b]) rendered by a Court of Special Sessions of the Town of Torrey, County of Yates, the Hon. PETER JENSEN, Justice of the Peace, presiding on December 21, 1966. Upon conviction, the court imposed a fine in the sum of $25.

The defendant contends the radar device used to measure the speed of the defendant's automobile had not been tested and

---

that, since there was no proof in the case other than that shown on the radar graph, the conviction must fall for failure of proof.

Parenthetically, it should be noted that the defendant had blocked, to the satisfaction of the Trial Justice, any testimony by the State Police officer concerning his independent estimate of the defendant's speed.

A conviction for a speeding violation may rest upon evidence of a " tested " radar instrument. (*People* v. *Magri,* 3 N Y 2d 562; *People* v. *Dusing,* 5 N Y 2d 126.) Thus, the prime question presented is whether the radar device was, in fact, tested or untested. The trial minutes indicate that on November 19, 1966, Trooper Demma set the radar instruments in the selected location and, prior to apprehension of the defendant, tested the radar instrument by causing a tuning fork (calibrated at 50 miles per hour) to be struck in front of and within the zone of influence of the radar device, which resulted in a radar speed meter reading of 50 miles per hour. This reading also appeared on the radar graph admitted into evidence. The trooper further testified that Trooper McLaughlin then drove a police test car through the radar zone of influence at 50 miles per hour and he (Demma) observed that the radar speed meter and graph both registered a speed of 50 miles per hour. These two " tests " were repeated at the end of the tour of duty at the same location with the same results. (Cf. *People* v. *Sachs,* 1 Misc 2d 148.)

Upon objection of the defendant the Trial Justice declared the People's offer of the test car's calibrated speed record inadmissible. No offer of proof was made as to the accuracy of the tuning fork. It is chiefly upon these grounds that the appellant now contends that there was a failure of proof as to the accuracy of the radar device. (Cf. *People* v. *Martirano,* 52 Misc 2d 64, 65.)

While it is unfortunate the Trial Justice saw fit to deny the admissibility of the speedometer calibration record and thereby to confirm the accuracy of the test car's speedometer, such absence of proof is not fatal to the instant case. As Judge Van Voorhis said in his concurring opinion in *People* v. *Dusing* (5 N Y 2d 126, 131), " Cases involving untested speedometers and radar apparatus should not arise. Any objections which could be made to the introduction of evidence concerning readings of such apparatus would be simply and easily overcome by making regular tests and keeping records of the tests in the books of the police department by which the tests were made. The offer in evidence under section 374-a of the Civil Practice Act [now, rule 4518, CPLR] of such records indicating the routine testing of such devices would be all that is necessary ".

In the instant case this court is compelled to hold that it is more than coincidence four testings of the radar device indicated a speed of 50 miles per hour. To this court it is inconceivable the radar unit, the 50 miles per hour tuning fork and the test car speedometer could all be inaccurate to and in the same degree. (Cf. *People* v. *Martirano,* 52 Misc 2d 64, *supra.*) In *People* v. *Dusing* (5 N Y 2d 126, 128, *supra*) Associate Judge DESMOND, writing for the majority, said, " Radar and speedometer readings are generally admissible and may be sufficient in themselves *if there be reasonable proof of their accuracy.*" (Emphasis supplied.)

While our higher courts have not spelled out the exact limits to which the accused speeder may go upon trial to plumb the accuracy of the testing devices, this court is not prepared to cast the burden on the People of offering proof of the accuracy of both the calibrated tuning fork and the speedometer of the test car beyond the simple comparative analyses made in the instant case. Beyond such simple tests must lie tests of the devices used to test other measuring devices. Beyond these tests must lie metal fatigue tests, conductivity tests, and electrical time-lag tests involving the variant components used in all of the testing devices, and so on and on. These tests must end somewhere. The oft-heard layman's opinion that the enforcement of the law can be frustrated by a " legal bag of tricks " must not be encouraged by slavish adherence to hypertechnical requirements of myriad testings of the components of every device used to measure accuracy of every other measuring device.

In the instant case this court holds there was " reasonable proof " of the accuracy of the tuning fork, the accuracy of the test car's speedometer and the accuracy of the radar itself which, in effect, tested in concert, both before and after the apprehension of the defendant, revealed (by comparative analysis) to the trained radar operator that the radar device was indeed functioning accurately and properly. (*People* v. *Dusing,* 5 N Y 2d 126, *supra*; cf. *People* v. *Blattman,* 50 Misc 2d 606; *People* v. *Martirano,* 52 Misc 2d 64, *supra.*)

No error may be assigned to the court for its admission into evidence of the radar graph records, nor of the graph identifying the defendant's automobile and speed. If there was error in the concluding remarks of the Honorable Justice, it was harmless error.

Upon the law and the facts, the judgment of conviction is hereby affirmed.