146 N.J. Super. 23 (1976)
368 A.2d 952
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PASQUALE J. CARDONE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 7, 1976.
Decided December 30, 1976.
*25 Before Judges HALPERN, BOTTER and KOLOVSKY.
Messrs. Valore, McAllister, DeBrier, Aron & Westmoreland, attorneys for appellant (Mr. Thomas J. Vesper on the brief).
Mr. Richard J. Williams, Atlantic County Prosecutor, attorney for respondent (Mr. David Forman, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by BOTTER, J.A.D.
Defendant appeals his conviction for speeding (N.J.S.A. 39:4-98) based upon radar evidence. On November 25, 1975 defendant was clocked at 60 m.p.h. in a 45 m.p.h. zone. He was found guilty in the municipal court and in a trial de novo in the County Court, and was fined $15, with $10 costs. On this appeal defendant contends that, as was held in State v. Overton, 135 N.J. Super. 443, 447 (Cty. Ct. 1975), the trial judge improperly admitted certificates of calibration and accuracy of the radar machine and of a tuning fork used to test the machine. He contends that the certificates were admitted without satisfying any exception to the hearsay rule (see id.) and that, lacking competent proof of the accuracy of the radar unit, the State failed to establish defendant's guilt beyond a reasonable doubt. He urges that we announce proper guidelines for the admissibility of evidence of accuracy of radar *26 speed measuring devices and other instruments used by the police, such as breathalyzer machines, and that we condemn the improper presumption of validity and accuracy which lower courts accord to such machines.
Patrolman McKinley of the Northfield Police Department testified for the State. Defendant stipulated that he was a qualified radar operator. On the date involved McKinley set up the radar unit and calibrated it by an internal mechanism. This was done by a calibration switch on the machine. If calibrated internally the machine will blink and give an audible sound at 50 m.p.h. After this was done the officer tested the machine with a tuning fork. The machine showed a calibration reading of 50 m.p.h., which meant that it was operating properly and was properly calibrated. Over defendant's objection the trial judge then admitted in evidence the two certificates.
The first certificate (S-1 in evidence) is as follows:
CERTIFICATE OF FIELD CALIBRATION
This is to certify that the undersigned Kustom Signals Representative performed road tests and field calibration with master certified tuning forks on Kustom Traffic Radar S.N. 2961 and found all systems to be functioning properly and the unit to be accurate to specification (+1 MPH)
 5/26/72 /s/ James R. Rawling 
 DATE KUSTOM REPRESENTATIVE
The above tests were performed in the presence of:
 Sgt. Robert V. Webb OF THE Northfield 
 NAME & TITLE DEPARTMENT
The second certificate (S-2 in evidence) is as follows:
 TUNING FORK
 CERTIFICATION OF ACCURACY
 This is to Certify that
 Tuning Fork S.N. 6676. 
 has been tested and found to oscillate at 1584 
 HERTZ. When used with a doppler traffic radar
 operating at 10.525 MH it will cause a calibration
 signal of 50 M.P.H.
 DATE 5-1-72 ENGINEER /s/ Cecil Watts 
That the speed of vehicles can be measured by radar devices has been judicially noticed for many years. State *27 v. Dantonio, 18 N.J. 570, 578-579 (1955). Radar readings "should be received in evidence upon a showing that the [device] was properly set up and tested by the police officers * * *." Id.; cf. State v. Johnson, 42 N.J. 146, 171 (1964), involving the use of a Harger Drunkometer; State v. Finkle, 128 N.J. Super. 199, 209 (App. Div.), aff'd o.b. 66 N.J. 139 (1974), cert. den. 423 U.S. 836, 96 S.Ct. 61, 46 L.Ed.2d 54 (1975), involving the use of VASCAR. The need to prove the proper working order of the machine and the competence of the operator as a condition for admitting the reading in evidence is "most essential, in view of the heavy impact the result can have" on the factfinder. State v. Johnson, supra.
The proofs show that the radar machine had been tested before defendant was clocked. The question here is whether the certificates can be admitted in evidence as proof of accuracy of the devices used for testing the proper operation of the machine on the morning in question. We do not consider whether it was essential to prove that the mechanical devices used for testing the radar unit had in turn been tested by other mechanical devices and found accurate. Surely there must be some point in circling back at which the testing must stop. See People v. Stephens, 52 Misc.2d 1070, 1072, 277 N.Y.S.2d 567, 569 (Cty. Ct. 1967).[1]
*28 No proof was offered to qualify the certificates as records made in the regular course of business. Evid. R. 63(13); see State v. McGeary, 129 N.J. Super. 219, 229 (App. Div. 1974). However, proof of a condition for the admissibility of other evidence need not satisfy regular rules of evidence. Evid. R. 8(1). This rule provides for the determination by the court of preliminary issues of admissibility of evidence when such admissibility "is subject to a condition" which is in issue. The rule provides that in determining the issue:
* * * the rules of evidence shall not apply except for Rule 4 or a valid claim of privilege.
This provision was not contained in the Uniform Rules of Evidence from which our Rules of Evidence were sculptured, and was unique among evidence codes in this country prior to the adoption of the Federal Rules of Evidence containing an identical provision. Fed. Evid. Rule 104(a), 28 U.S.C.A. It is not referred to in any previously reported decision and, in fact, was not referred to by the parties to this appeal or the courts below. However, we are satisfied that this rule sanctions the admissibility of certificates of this kind when used by the court solely as evidence of the proper operating condition of the radar device as a prerequisite to the admissibility of the radar readings. Report of the N.J. Supreme Court Committee on Evidence (1963), Comment on Rule 8 at 25-26; see Howard v. Sigler, 454 F.2d 115 (8 Cir.1972), cert. den. 409 U.S. 854, 93 S.Ct. 188, 34 L.Ed.2d 98 (1972); Fed. Evid. Rule 104(a), 28 U.S.C.A., Notes of Advisory Committee, Note to Subdivision (a) at 41; 5 Wigmore, Evidence (Chadbourn rev. 1974) § 1385; McCormick, Evidence (2d ed. 1972), § 53, n. 91 at 122-123; Weinstein's Evidence, ¶ 104[02] at 104-24 to 25 (1976); Maguire and Epstein, "Rules of Evidence in Preliminary Controversies as to Admissibility," 36 Yale L.J. 1101 (1927); cf. Healy v. Rennert, 9 N.Y.2d *29 202, 213 N.Y.S.2d 44, 1173 N.E.2d 777 (Ct. App. 1961). Clearly the rule contemplated the use of affidavits and other hearsay in such preliminary inquiries so long as the evidence appears to be reliable. Thus, the certificates were properly admitted in evidence. The evidentiary rulings in State v. McGeary and State v. Overton, supra, may be explained by the courts' failure to consider the application of Evid. R. 8(1) to this issue.
Defendant argues that the certificates are not sufficiently current to justify their admission. We disagree. They are relevant, and we find no abuse of discretion in the weight given them by the trial judge. Bear in mind that these certificates relate only to the accuracy of the devices used to test the radar machine itself. See related comments and note 1 above on this aspect.
Finally, defendant argues that sufficient evidence of excessive speed was lacking in the case. We note that defendant himself testified that his speed was "between 45 and 50" m.p.h. when he passed two other vehicles. This testimony adds to the conclusion that there was sufficient credible evidence to support the finding below that defendant was travelling in excess of 45 m.p.h. State v. Johnson, supra, 42 N.J. at 162.
Affirmed.
NOTES
[1] The court there said that the state would not have to prove the accuracy of the tuning fork and the speedometer of the test car beyond the "simple comparative analyses" made in the case. We observe that defendants are allowed to testify as to their speed based upon estimates or their own speedometer readings, without first proving the recent calibration of the speedometer. It all goes to the weight of the evidence, and in the absence of contrary evidence we can infer that devices used to test the accuracy of a machine, such as an internal calibrating device or a tuning fork, do not themselves need frequent testing. Here defendant made no effort to prove that the internal calibrating device or the tuning fork were inaccurate. The coincidence of their readings is some evidence of their reliability. State v. Overton, supra, 135 N.J. Super. at 449-451.