259 N.J. Super. 417 (1992)
614 A.2d 156
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
WILLIAM BYNUM, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1992.
Decided October 5, 1992.
*418 Before Judges MICHELS, BAIME and WALLACE.
Virginia M. Lincoln, Assistant Essex County Prosecutor, argued the cause for appellant (James F. Mulvihill, Acting Prosecutor, attorney; Virginia M. Lincoln of counsel and on the letter-brief).
Robert L. Sloan, Assistant Deputy Public Defender, argued the cause for respondent (Zulima V. Farber, Public Defender, attorney; Robert L. Sloan of counsel and on the letter-brief).
The opinion of the court was delivered by BAIME, J.A.D.
The Law Division dismissed defendant's indictment after granting his motion to suppress evidence. The State appeals, contending that the court erred by (1) excluding hearsay evidence at the suppression hearing, and (2) finding that the police acted unlawfully in seizing defendant's person. We reverse the order granting defendant's motion to suppress and reinstate the indictment.
On August 31, 1990, Detective Derrick Hatcher of the Newark Police Department received information from an anonymous female caller that an Hispanic male would be arriving *419 from New York on a New Jersey Transit train at 1:19 p.m. with a large quantity of narcotics. Hatcher and his partner, Detective James O'Connor, immediately proceeded to Penn Station to await the suspect's arrival. Both detectives were in plain clothes, but had their badges displayed on chains around their necks. O'Connor waited on the passenger arrival platform while Hatcher positioned himself downstairs, in front of the Market Street exit.
Approximately 20 minutes later, at 1:18 p.m., the train from New York arrived. From the bottom of the stairs, Hatcher observed a black male, later identified as defendant, being pursued by O'Connor. Upon seeing Hatcher's badge, defendant stopped and shouted, "All right, you got me. I respect what you're doing." Defendant simultaneously reached into his right-hand pocket and pulled out a clear plastic bag containing a white powdery substance. A cursory search of defendant's trouser pocket revealed a tin foil containing an additional quantity of suspected narcotics.
Only Hatcher testified for the State. O'Connor was apparently on vacation. However, the prosecutor attempted to elicit from Hatcher an oral statement allegedly made by O'Connor after the arrest that defendant fled upon seeing O'Connor's badge. The Law Division judge excluded the proffered testimony on the basis that Hatcher lacked personal knowledge respecting O'Connor's observations and perceptions.
Defendant did not testify, but presented his neighbor, Russell Brown, as a witness. Brown testified that Hatcher signalled defendant to stop and asked him to empty his pockets. Brown claimed that he next saw the officer grab defendant and swing him toward the barred door at the exit. He also observed Hatcher remove his hand from defendant's pocket.
In rendering her opinion, the Law Division judge saw no substantial inconsistencies between Hatcher's account of the incident and that offered by Brown. She reconciled their testimony by noting that Brown's observations might have been *420 made after defendant's arrest when Hatcher searched his trouser pockets. The point to be stressed is that the court apparently believed Hatcher's description of the incident. We must address the constitutionality of the police officers' conduct within that context.
The judge determined that Hatcher, by positioning himself at the exit door with his badge exposed, had engaged in a show of authority sufficient to restrain defendant's liberty. The judge found that the officer's conduct constituted a seizure of defendant's person and that the detention was not supported by either probable cause or reasonable suspicion. She added that "running in a train station is ... [a] common activity" and that Hatcher had no reason to believe defendant was engaged in criminal conduct. It is against this backdrop that we consider the State's arguments.
Initially, we reject the State's contention that the Law Division judge erroneously excluded O'Connor's hearsay statement. We recognize that our evidentiary rules generally do not apply in an Evid.R. 8(1) hearing. See, e.g., State v. Dohme, 229 N.J. Super. 49, 53, 550 A.2d 1232 (App.Div. 1988); State v. Moore, 158 N.J. Super. 68, 81-82, 385 A.2d 867 (App.Div. 1978); State v. Cardone, 146 N.J. Super. 23, 28, 368 A.2d 952 (App. Div. 1976). Only Evid.R. 4 and a valid claim of privilege are applicable in such a hearing. Evid.R. 8(1). Assuming that a suppression hearing falls within the purview of Evid.R. 8(1), we are nevertheless convinced that a judge may exclude otherwise inadmissible evidence which he or she believes is totally unreliable. In our view, reliability remains the linchpin. See State v. Cardone, 146 N.J. Super. at 29, 368 A.2d 952. In reaching this conclusion, we emphasize that we are not concerned here with hearsay information relied upon by a police officer in making an arrest. Instead, we are dealing with a post-arrest comment, possessing no particular indicia of reliability. In that context, we are satisfied that a judge has the discretionary power to exclude unreliable, inadmissible hearsay evidence from a suppression *421 hearing, notwithstanding the express prescriptions of Evid.R. 8(1).
We now turn to the State's argument that the search and seizure comported with constitutional requirements. In our view, the validity of the search stands or falls on whether there was a seizure of defendant's person, and, if so, when it occurred. We begin our analysis with a brief recitation of well-settled principles. The police do not violate the Fourth Amendment by "merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if he is willing to listen, or by offering as evidence in a criminal prosecution his voluntary answers to such questions." Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983). "[M]ere field interrogation, without more, by a police officer does not involve `detention' in the constitutional sense so long as the officer does not deny the individual the right to move." State v. Sheffield, 62 N.J. 441, 447, 303 A.2d 68 (1973). However, even a brief detention short of a traditional arrest must be founded on a constitutionally recognized objective justification. See United States v. Mendenhall, 446 U.S. 544, 551, 100 S.Ct. 1870, 1875, 64 L.Ed.2d 497, 507 (1980). While an arrest must be supported by probable cause, a police officer may briefly detain an individual where he can "point to specific and articulable facts, which taken together with rational inferences ... reasonably warrants that intrusion." Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); see also State v. Davis, 104 N.J. 490, 500, 517 A.2d 859 (1986); State v. Sheffield, 62 N.J. at 446, 303 A.2d 68.
These principles are mandated by common, everyday realities. The police officer's duties include vital preventive roles. State v. Dilley, 49 N.J. 460, 464, 231 A.2d 353 (1967). He or she must deal with a "rich diversity" of street encounters with citizens. State v. Sheffield, 62 N.J. at 446, 303 A.2d 68. A police officer must often act on the spur of the moment *422 without the opportunity for abstract contemplation that we judges enjoy. However phrased, police conduct should be measured by reasonable necessity often reflecting the tumult of the streets. State v. Gerardo, 53 N.J. 261, 264, 250 A.2d 130 (1969).
These practical realities must be considered in determining the extent to which police officers may intrude upon the constitutionally protected interests of a private citizen. State v. Davis, 104 N.J. at 500, 517 A.2d 859; State v. Sheffield, 62 N.J. at 446, 303 A.2d 68; State v. Pierson, 223 N.J. Super. 62, 67, 537 A.2d 1340 (App.Div. 1988); State v. Alexander, 191 N.J. Super. 573, 576-77, 468 A.2d 713 (App.Div. 1983), certif. denied, 96 N.J. 267, 475 A.2d 570 (1984). Obviously, "not all personal intercourse between police [officers] and citizens involves `seizures' of persons." Terry v. Ohio, 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. The United States Supreme Court has adopted the view that "a person is `seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." United States v. Mendenhall, 446 U.S. at 553, 100 S.Ct. at 1877, 64 L.Ed.2d at 509. Constitutional safeguards are applicable "[o]nly when such restraint is imposed." Ibid. The appropriate test is whether, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509. The issue is fact-sensitive. "[C]ircumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Ibid.
Although these principles can be articulated with disarming ease, the difficulty is in their application. Having said this, we are convinced that the police conduct under review here did not transgress constitutional principles.
*423 At the outset, we do not regard O'Connor's pursuit of defendant as a seizure. More specifically, we hold that pursuit of a suspect by the police, without more, does not constitute either a search or a seizure of his person. Although the subject has received uneven treatment in our decisions, compare State v. Doss, 254 N.J. Super. 122, 127 n. 2, 603 A.2d 102 (App.Div. 1992), with State v. Farinich, 179 N.J. Super. 1, 5, 430 A.2d 233 (App.Div. 1981), certif. denied, 88 N.J. 497, 443 A.2d 711 (1981), research discloses no reported New Jersey opinion resolving the precise issue. However, the United States Supreme Court has held that pursuit does not necessarily "communicate to the reasonable person an attempt to capture or otherwise intrude upon [an individual's] freedom of movement." Michigan v. Chesternut, 486 U.S. 567, 575, 108 S.Ct. 1975, 1980, 100 L.Ed.2d 565, 573 (1988). While acknowledging that pursuit of a pedestrian may be "somewhat intimidating," the Court found that it is not, by itself, so coercive as to implicate constitutional safeguards. Id. at 576, 108 S.Ct. at 1981, 100 L.Ed.2d at 573.
Recently, the Court expanded the reach of this principle by holding that pursuit coupled with the command to halt did not constitute such a show of authority as to constitute a seizure. California v. Hodari, 499 U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). We need not address that issue. The record here does not reflect that O'Connor ordered defendant to stop, displayed a gun or otherwise brandished a weapon, aggressively blocked defendant's course or otherwise controlled the direction or speed of his movement. While perhaps one or more of these additional circumstances might transmogrify mere pursuit into a seizure requiring an articulable suspicion of criminal activity, we leave resolution of that question for another day. State v. Doss, 254 N.J. Super. at 128, 603 A.2d 102. We need decide only the case before us. We find that O'Connor's pursuit of defendant did not constitute a seizure and thus the State was not required to establish an objective constitutional justification supporting his conduct. Neither federal nor *424 state constitutional principles compelled suppression of the seized evidence on that account.
The question remains whether Hatcher's conduct in stationing himself in front of the Market Street exit constituted a seizure of defendant's person under the circumstances. Unfortunately, the paltry record contains little information bearing on that issue. For example, we do not know whether the officer blocked the exit or commanded the defendant to halt. Although the Law Division judge found that Hatcher's conduct was so intrusive as to constitute a seizure of defendant's person, this conclusion is questionable in light of recent United States Supreme Court opinions. See, e.g., Florida v. Bostick, ___ U.S. ___, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); INS v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).
We need not dwell upon the subject. Assuming that a seizure did occur, we are convinced that Hatcher had "a particularized and objective basis" for suspecting defendant was engaged in criminal activity. United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621, 628-29 (1981); see also Michigan v. Summers, 452 U.S. 692, 696-701, 101 S.Ct. 2587, 2590-94, 69 L.Ed.2d 340, 345-49 (1981); Brown v. Texas, 443 U.S. 47, 50-51, 99 S.Ct. 2637, 2640-41, 61 L.Ed.2d 357, 361-62 (1979); Adams v. Williams, 407 U.S. 143, 146-49, 92 S.Ct. 1921, 1923-25, 32 L.Ed.2d 612, 617-18 (1972). We agree with the Law Division judge that running in a train station is a common activity. Being pursued by a police officer is an entirely different matter. See, e.g., State v. McNair, 60 N.J. 8, 285 A.2d 553 (1972). Moreover, the information received from the anonymous informant gave the circumstance of flight special meaning. The fact that the suspect was identified as a "Hispanic" male did not exclude the hypothesis that he was dark skinned. Hatcher would have been derelict in his duties had he stood idly by and allowed defendant to escape. Assuming, without deciding, that Hatcher stopped and detained the defendant, this conduct was justifiable under the circumstances. *425 When defendant made an incriminatory statement and produced what appeared to be cocaine, he was properly placed under arrest and searched. We find no impropriety.
We thus reverse the order suppressing the evidence, reinstate the indictment and remand the matter for trial.