687 A.2d 1025

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. URIEL ZAPATA, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 26, 1996—Decided February 4, 1997.

Before Judges MICHELS, MUIR, JR. and KLEINER.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Kevin G. Byrnes*, Designated Counsel, of counsel and on the brief).

*Charles R. Buckley*, Deputy Attorney General–In Charge, Acting Bergen County Prosecutor, attorney for respondent (*John J. Scaliti*, Special Deputy Attorney General–Acting Assistant Prosecutor, of counsel and on the letter brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Following a joint jury trial with co-defendants Fernando Hernandez (Hernandez) and Germon O. Rodriguez (Rodriguez), defendant Uriel Zapata was found guilty of possession of cocaine in a quantity of one-half ounce or more but less than five ounces with intent to distribute, a crime of the second degree, in violation of *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(2) (First Count), possession of cocaine with intent to distribute within 1,000 feet of school property, a crime of the third degree, in violation of

*N.J.S.A.* 2C:35–7 (Second Count), and possession of cocaine, a crime of the third degree, in violation of *N.J.S.A.* 2C:35–10a(1) (Third Count).[1] Defendant's motion for a judgment of acquittal was denied. The trial court merged defendant's convictions for possession of cocaine with intent to distribute within 1,000 feet of school property under the Second Count and possession of cocaine under the Third Count into his conviction for possession of cocaine with intent to distribute under the First Count and committed defendant to the custody of the Commissioner of the Department of Corrections for five years, with a three-year period of parole ineligibility. In addition, the trial court imposed a $2,000 Drug Enforcement and Demand Reduction Penalty, a $50 laboratory fee, and a $30 Violent Crimes Compensation Board penalty and suspended defendant's driver's license in New Jersey for two years. Defendant appeals.

## I.

Following defendant's indictment, he and co-defendants Hernandez and Rodriguez moved to suppress the evidence seized pursuant to a warrantless search of the motor vehicle in which defendant was a passenger. According to the proofs at the suppression hearing, on April 16, 1991, at approximately 7:15 p.m., Detective Joseph M. Martin of the Englewood Police Department received a dispatch regarding an anonymous call taken by an Englewood Police Dispatcher. Detective Martin was assigned to the Neighborhood Stabilization Squad, which dealt primarily with narcotic enforcement. The dispatch informed Detective Martin that a few male Hispanics in a tan Chevy were distributing cocaine in a parking lot at Vinnie's Tavern in Englewood. Detective Martin was also given the number of the New York license plate. Upon receiving the dispatch, Detective Martin responded to the area of Vinnie's Tavern.

---

[1] The trial court granted the motion for a mistrial as to co-defendant Fernando Hernandez. Co-defendant German O. Rodriguez was convicted on the three counts of the indictment.

While Detective Martin was en route, Detective Edward Murray radioed that he had left Vinnie's Tavern's parking lot and was traveling on the street on which the tavern was located. Detective Murray radioed that he was behind a tan Chevy with New York license plates, which matched the description received from the dispatcher. Detective Martin soon observed the vehicle. He cut his vehicle in front of the suspect vehicle and ordered the driver to pull into a parking space along the street. Detective Murray's vehicle blocked the rear of the suspect vehicle.

Detectives Murray and Martin ordered the three passengers to exit the vehicle and directed them to place their hands on the hood of the vehicle. Hernandez was the driver, defendant was the front seat passenger, and Rodriguez was the rear seat passenger. As Rodriguez exited the vehicle, Detective Martin saw a small, plastic, glassine-type of envelope with a red stripe on it, which appeared to contain cocaine. The envelope was protruding from the crease of the rear seat near where Rodriguez had just been sitting. Based on his experience and training and the information provided by the police dispatcher, Detective Martin suspected that the envelope contained cocaine. He immediately seized the envelope as evidence.

Detective Martin then arrested defendant and the two co-defendants. Detective Martin did not find any other evidence of weapons or narcotic paraphernalia. However, he found $1,013.30 in cash on Hernandez, $24.15 in cash on Rodriguez and $136.46 in cash on defendant. He proceeded to attempt to advise the defendants of their rights verbally, but they claimed that they did not understand English. Defendant, Hernandez, and Rodriguez were then transported to Police Headquarters.

Detective Martin further testified that at the time defendant and the two co-defendants were ordered out of the vehicle, they could not have driven away and they were not free to leave. Detective Martin also testified that seven-eighths of the envelope was visible on the seat, but one-eighth was hidden in the back seat crease. Detective Martin impounded the vehicle and notified the

Bergen County Police K–9 Unit because he felt that, based on the anonymous call, the evidence found, and his experience, more narcotics were in the vehicle. A police dog indicated that drugs were located in the left vent of the air-conditioning unit. When the unit was removed, Detective Martin found a brown paper bag containing a total of thirty-seven plastic bags of suspected cocaine. Detective Martin testified that he did not see the brown bag in the air-conditioning unit at the scene and that he did not find any other evidence when he conducted a search at the scene.

At the conclusion of the suppression hearing, Judge Minuskin in the Law Division found that Detectives Martin and Murray, based upon the anonymous call and the corroborated observation of the suspect vehicle,

> had reasonable and probable cause to stop the vehicle as authority to be able to investigate and to determine whether or not a crime was being committed, and upon observing in connection therewith based upon that which was said to them the Court believes that they had the right to order the occupants to exit suspecting that this vehicle based on an anonymous tip contained contraband.

The trial court also upheld the seizure of the plastic glassine envelope, the arrest of defendant and his co-defendants, and the seizure of the brown bag containing thirty-seven plastic bags of suspected cocaine hidden in the air-conditioning unit and denied the motion to suppress.

## II.

The facts adduced at the suppression hearing were corroborated at trial. Detective Murray testified that after receiving the dispatch message he observed a Brown Chevy Celebrity with New York plates and three passengers leaving the parking lot of Vinnie's Tavern. The vehicle was registered to Elid Montola of New York City. Efforts to locate Elid Montola were unsuccessful. Defendant was determined to be a resident of New York City, Hernandez, a resident of Palisades Park, and Rodriguez, a resident of Englewood.

The substance recovered from the vehicle was determined to be cocaine, totaling 0.75 ounces (approx. 21 grams) and worth up to

$1,800. Robert Dodd (Dodd), an Investigator with the Bergen County Narcotic Task Force, testified that the cocaine recovered was possessed with an intent to distribute. Dodd's opinion was based on the amount of cocaine found, the way it was packaged, the New York City registered vehicle, the number of people in the vehicle and their origins, the lack of drug paraphernalia, and the amount of money and its denominations.

Detective Murray testified on recross-examination that he had arrested one of the defendants subsequent to the April 16, 1991 incident. Defense counsel immediately moved for a mistrial. Having determined that Detective Murray was referring to Hernandez, the trial court granted the motion as to Hernandez, but denied the motion as to defendant and Rodriguez. The trial court instructed the jury that Detective Murray had not arrested either of the other defendants before or after April 16, 1991. He further instructed the jury that Hernandez's trial had been severed from the present trial and that Detective Murray's response should in no way prejudice the two remaining defendants.

Defendant testified that he had attempted to go to the Columbia Restaurant, in Englewood, but he took the wrong bus from New York. He was let off in an unfamiliar place and could not locate the restaurant. According to defendant, he saw Hernandez drive by and recognized him because he had seen him in New York a few times. However, defendant had never met nor had he ever spoken to Hernandez before the day of the arrest. Defendant did not recognize the vehicle and did not know who owned it. He asked Hernandez for directions, but instead Hernandez offered to drive him to the Columbia Restaurant. They drove to the restaurant stopping only at a laundromat where Hernandez dropped off some clothing. Defendant was about to exit the vehicle when Rodriguez approached Hernandez and asked him for a ride home. Defendant had never seen Rodriguez before. Hernandez acquiesced and asked defendant to ride along, after which they would return to the Columbia Restaurant to eat together. Shortly

after the three had begun to drive Rodriguez home they were stopped by Detectives Martin and Murray.

Defendant also testified that he did not see any drugs in the vehicle, that he did not use any drugs while in the vehicle, and that he did not sell any drugs while in the vehicle. Defendant had seen Hernandez a few times in front of defendant's place of work, a mechanic's shop near Broadway. Defendant testified that he did not know the name of the shop because he was paid in cash. He also could not recall the address of his place of work or the first name of his boss.

Rodriguez testified that he went to the Columbia Restaurant to meet his brother who never showed up. The owner of the restaurant confirmed that Rodriguez was present the day in question. As he was leaving the restaurant, he saw Hernandez, an acquaintance, pull into the restaurant. Hernandez asked where Rodriguez was going and upon being told he was going home, Hernandez offered him a ride. Shortly after getting into the vehicle, the police pulled the vehicle over. Rodriguez testified that he did not own the drugs found in the vehicle, that he did not know who owned the drugs, and that he could not see the drugs from his position in the vehicle. Rodriguez further testified that he had never seen defendant before that day and that he was not at Vinnie's Tavern, which was a block from the Columbia Restaurant, the day of the arrest.

At the conclusion of the proofs, the jury found defendant and Rodriguez guilty of all charges. Defendant's motion for judgment of acquittal notwithstanding the verdict was denied and the trial court, after merging defendant's convictions on the Second and Third Counts into his conviction on the First Count, sentenced defendant to three years with a three-year period of parole ineligibility, imposed the mandatory penalties and suspended defendant's driving privileges for two years. This appeal followed.

Defendant seeks a reversal of his convictions on the following grounds set forth in his brief:

POINT I
 THE DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE
 SEARCHES AND SEIZURES AS GUARANTEED BY THE FOURTH
 AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I
 PAR. 7 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED.

POINT II
 THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL
 SHOULD HAVE BEEN GRANTED.

POINT III
 THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE (Not
 Raised Below).

POINT IV
 THE DEFENDANT'S MOTION FOR A MISTRIAL SHOULD HAVE BEEN
 GRANTED BECAUSE OF UNDUE PREJUDICE RESULTING FROM AN
 OFFICER'S GRATUITOUS COMMENT ABOUT THE SUBSEQUENT AR-
 REST OF THE CO-DEFENDANT.

## III.

Defendant contends that his right to be free from unreasonable searches and seizures was violated when Detectives Martin and Murray seized and searched the vehicle in which he was riding. Defendant, who has standing because he was charged with a possessory interest in the property seized, *State v. Alston*, 88 *N.J.* 211, 228–29, 440 *A.*2d 1311 (1981), claims that the State has failed to prove that the seizure and warrantless searches were lawful and, therefore, the evidence discovered in the vehicle should have been suppressed. Defendant argues that the State has failed to show the initial vehicle seizure was based on reasonable suspicion because the anonymous caller "did not indicate that the information was based on personal knowledge, the content of the information was insufficient, and the reliability of the anonymous informer was never established." We disagree.

We are satisfied from our study of the record and arguments presented that the information supplied to the police by the anonymous caller was sufficient to establish probable cause to stop and search the vehicle in which defendant was riding. We, therefore, affirm the denial of the motion to suppress substantially for the reasons expressed by Judge Minuskin in his oral opinion of June 11, 1992.

■ The United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." *U.S. Const.* amend. IV, § 1. *See also N.J. Const.* art. I, ¶ 7. Thus, the Fourth Amendment of the United States Constitution does not forbid all searches and seizures. *State v. Bruzzese,* 94 *N.J.* 210, 217, 463 *A.*2d 320 (1983), *cert. denied,* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984); *State v. Anderson,* 198 *N.J.Super.* 340, 348, 486 *A.*2d 1311 (App.Div.), *certif. denied,* 101 *N.J.* 283, 501 *A.*2d 946 (1985). "Rather, it only proscribes those that are judicially deemed unreasonable." *State v. Anderson, supra,* 198 *N.J.Super.* at 348, 486 *A.*2d 1311. *See State v. Bruzzese, supra,* 94 *N.J.* at 217, 463 *A.*2d 320 (citing *State v. Campbell,* 53 *N.J.* 230, 233, 250 *A.*2d 1 (1969)). "Indeed the touchstone of the fourth amendment is reasonableness." *State v. Bruzzese, supra,* 94 *N.J.* at 217, 463 *A.*2d 320.

■ Further, Fourth Amendment issues are complex and are "peculiarly dependent upon the facts involved. Commonly, such constitutional issues involve no more than a seasoned 'value judgment upon a factual complex rather than an evident application of a precise rule of law.'" *State v. Anderson, supra,* 198 *N.J.Super.* at 348, 486 *A.*2d 1311 (citing *State v. Funicello,* 60 *N.J.* 60, 72, 286 *A.*2d 55 (Weintraub, C.J., concurring), *cert. denied,* 408 *U.S.* 942, 92 *S.Ct.* 2849, 33 *L.Ed.*2d 766 (1972)).

■ The right to be free from unreasonable searches and seizures includes the right to be free from investigatory vehicle detention "except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law...." *Delaware v. Prouse,* 440 *U.S.* 648, 663, 99 *S.Ct.* 1391, 1401, 59 *L.Ed.*2d 660, 673 (1979); *State v. Carpentieri,* 82 *N.J.* 546, 548–49, 414 *A.*2d 966 (1980). In *Drake v. County of Essex,* 275 *N.J.Super.* 585, 589–90, 646 *A.*2d 1126 (App.Div.1994), we explained the concept of "reasonable suspicion" as follows:

Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 *U.S.* 1, 7, 109 *S.Ct.* 1581, 1585, 104 *L.Ed.*2d 1, 10 (1989); *accord Rawlings v. Police Dep't of Jersey City*, 133 *N.J.* 182, 191, 627 *A.*2d 602 (1993). In fact, "[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 *U.S.* 325, 330, 110 *S.Ct.* 2412, 2416, 110 *L.Ed.*2d 301, 309 (1990); *accord State in the Interest of H.B.*, 75 *N.J.* 243, 251, 381 *A.*2d 759 (1977). Moreover, "[t]he concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *United States v. Sokolow, supra*, 490 *U.S.* at 7, 109 *S.Ct.* at 1585, 104 *L.Ed.*2d at 10 (quoting *Illinois v. Gates*, 462 *U.S.* 213, 232, 103 *S.Ct.* 2317, 2329, 76 *L.Ed.*2d 527, 544 (1983)). Rather, it requires an evaluation of "'the totality of the circumstances-the whole picture.'" *Id.* at 8, 109 *S.Ct.* at 1585[,] 104 *L.Ed.*2d at 10 (quoting *United States v. Cortez*, 449 *U.S.* 411, 417, 101 *S.Ct.* 690, 695, 66 *L. Ed.*2d 621, 629 (1981)).

■ Under the totality of the circumstances approach, "information given by an informant whose inherent reliability has not been shown may nevertheless be used to establish probable cause to obtain a search warrant if the informant's veracity is bolstered by the totality of the circumstances." *State v. Probasco*, 220 *N.J.Super.* 355, 358, 532 *A.*2d 262 (App.Div.1987). *See also United States v. Reyes*, 792 *F.*2d 536, 538–40 (5th Cir.), *cert. denied*, 479 *U.S.* 855, 107 *S.Ct.* 191, 93 *L. Ed.*2d 124 (1986); *State v. Foreshaw*, 245 *N.J.Super.* 166, 176–79, 584 *A.*2d 832 (App.Div.), *certif. denied*, 126 *N.J.* 327, 598 *A.*2d 886 (1991). In *State v. Probasco, supra*, we explained:

If the observations of police during an investigation may be used to bolster the veracity of an informant's information offered to establish probable cause to obtain a search warrant, such observations, where the circumstances are exigent, may similarly be used to bolster the veracity of an informant's information to establish probable cause to conduct a warrantless search.

[220 *N.J.Super.* at 358, 532 *A.*2d 262.]

■ Similarly, this approach may be utilized to determine whether reasonable suspicion has been established to justify an investigatory stop. *See Alabama v. White*, 496 *U.S.* 325, 110 *S.Ct.* 2412, 110 *L.Ed.*2d 301 (1990). Thus, contrary to defendant's arguments, the value of and circumstances animating many anony-

mous tips cannot be lightly discounted. As the Federal Court of Appeals for the District of Columbia has observed:

> It is well-recognized that citizen informants in narcotic-ridden neighborhoods want to retain anonymity for fear of retaliation from traffickers. However, the peculiar nature of narcotics crimes means that arrests are almost totally dependent on tips and undercover work; there are no reporting "victims." Therefore, enforcement officials actively encourage such tips from citizens who deplore the effects of drug traffic on their children and their neighborhood. If we are serious about enforcing drug trafficking laws, police must have the ability to *reasonably follow-up such anonymous tips through investigation.*
>
> [*United States v. White,* 648 F.2d 29, 43–44 (D.C.Cir.) (footnotes omitted) (emphasis added), *cert. denied,* 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981).]

*See also State v. Smith,* 291 N.J.Super. 245, 255, 677 A.2d 250 (App.Div.1996).

In sum, an anonymous call may provide the factual predicate necessary to justify an investigatory stop when there is corroboration of the information furnished. This is not to say, however, that anonymous calls—standing alone—will always provide the reasonable suspicion necessary to justify an investigatory stop. That is because "the veracity of persons supplying anonymous tips is by hypothesis largely unknown, and unknowable." *Illinois v. Gates,* 462 U.S. 213, 237, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). Where the reliability of the anonymous tip is established through independent police work, investigatory stops are permissible. *See e.g. Alabama v. White, supra,* (police stop proper where police had received anonymous tip that defendant would leave particular apartment at particular time and travel to particular hotel while in possession of cocaine, which would be in brown attache case, and police corroborated certain details provided by tipster); *United States v. Walker,* 7 F.3d 26 (2nd Cir.1993), *cert. denied,* 510 U.S. 1169, 114 S.Ct. 1201, 127 L.Ed.2d 549 (1994) (anonymous tip, which provided physical description of unspecified individual who would be arriving on unspecified Amtrak train from south and stated he would be carrying automatic weapons, provided appropriate basis for investigatory stop in light of police officers' independent corroboration of significant aspects of tip coupled with fact that point of

departure was known source of contraband); *State v. Thomas,* 110 *N.J.* 673, 542 *A.*2d 912 (1988) (police, who had received anonymous tip regarding drug distribution in bar by individual wearing certain clothes, were justified in making investigatory stop of defendant, as he met description provided and police recognized him from prior drug arrest); *State v. Bynum,* 259 *N.J.Super.* 417, 614 *A.*2d 156 (App.Div.1992) (police officer, who along with his partner had been dispatched to train station on receipt of anonymous tip that Hispanic male arriving on 1:19 p.m. train would be carrying narcotics, properly stopped black male being chased by officer's partner).

■ Armed with these principles, we have no hesitancy in holding as did the trial court, that the police, based on their independent corroboration of the anonymous caller's information, had an articulable and reasonable suspicion that the occupants of the vehicle had been engaged in criminal activity justifying the investigatory stop. The police observation corroborated the anonymous caller's information that several Hispanic males were in a tan Chevy with New York license plates that had been in Vinnie's Tavern's parking lot. The anonymous caller stated that these men had been distributing cocaine. In sum, the totality of the circumstances justified the investigatory stop. Indeed, the police would have been derelict in their duty had they not stopped the vehicle. To the extent that *State v. Zutic,* 294 *N.J.Super.* 367, 683 *A.*2d 575 (App.Div.1996), may be read to support a result contrary to that reached here, we disagree with it and view this matter under the totality of the circumstances analysis discussed above. *See State v. Paturzzio,* 292 *N.J.Super.* 542, 549, 679 *A.*2d 199 (App.Div.1996).

Since the stop of the vehicle passed constitutional muster, it follows that the seizure of the cocaine in plain view on the back seat and the subsequent seizure of the cocaine in the vehicle's air-conditioning unit were not the "fruits of the poisonous tree." *See State v. Bruzzese, supra,* 94 *N.J.* at 210, 463 *A.*2d 320; *Sibron v. New York,* 392 *U.S.* 40, 88 *S.Ct.* 1889, 20 *L.Ed.*2d 917 (1968);

*Wong Sun v. United States*, 371 *U.S.* 471, 83 *S.Ct.* 407, 9 *L.Ed.*2d 441 (1963).

Accordingly, the police conduct challenged here clearly passed constitutional muster and the trial court properly denied defendant's motion to suppress the evidence discovered pursuant to the seizure and warrantless search of the vehicle in which defendant was a passenger.

## IV.

We are also satisfied that the trial court did not mistakenly exercise its discretion by denying's defendant's motion for a mistrial and, therefore, did not violate defendant's constitutional right of due process and equal protection of the law. *U.S. Const.* amend. XIV, § 1; *N.J. Const.* art. I, ¶ 1, 5.

Defendant made a mistrial motion after Detective Murray testified in response to a question by defense counsel on recross-examination that since April 16, 1991, he'd "made in excess of 100 or more arrests including one of the people that is on trial today...." After determining that Detective Murray was referring to Hernandez and not defendant or Rodriguez, the trial court granted Hernandez's motion for a mistrial and denied the motion of the others. Defendant argues that the prejudicial comments that justified a mistrial for Hernandez also compromised the integrity of his trial, since he and Hernandez were charged with joint constructive possession of the cocaine in the vehicle.

Decisions to grant or deny motions for mistrial are discretionary decisions. *State v. Winter*, 96 *N.J.* 640, 646–47, 477 *A.*2d 323 (1984); *State v. DiRienzo*, 53 *N.J.* 360, 383, 251 *A.*2d 99 (1969); *Greenberg v. Stanley*, 30 *N.J.* 485, 503, 153 *A.*2d 833 (1959). Such decisions are reviewable only for an abuse of discretion. *State v. Winter, supra*, 96 *N.J.* at 647, 477 *A.*2d 323. "Likewise, when weighing the effectiveness of curative instructions, a reviewing court should give equal deference to the determination of the trial court. The adequacy of a curative instruction

necessarily focuses on the capacity of the offending evidence to lead to a verdict that could not otherwise be justly reached." *Ibid.* When the alleged error is not of a constitutional nature, it should be disregarded unless clearly capable of producing an unjust result. *Id.* at 647–48, 477 *A.*2d 323.

 Detective Murray's comment violated the rules of evidence and was not properly admissible. *See N.J.R.E.* 404(b); *N.J.R.E.* 405(a). *See also State v. DiFrisco,* 137 *N.J.* 434, 497–98, 645 *A.*2d 734 (1994), *cert. denied,* —— *U.S.* ——, 116 *S.Ct.* 949, 133 *L.Ed.*2d 873 (1996); *State v. Neal,* 229 *N.J.Super.* 28, 35–36, 550 *A.*2d 998 (App.Div.1988). Any prejudice created by the comment was effectively cured by the trial court's careful and thorough curative instructions to the jury. Thus, giving due deference to the trial court's decision that the curative instructions would effectively cure any prejudice suffered by defendant, its decision to deny defendant's motion for mistrial was not an abuse of discretion. *State v. Winter, supra,* 96 *N.J.* at 647, 477 *A.*2d 323. Given the thoroughness of the curative instructions, their recital almost immediately after Detective Murray's comment, and the fact that any prejudice to defendant was indirect, the offending comment was not of such capacity that it could have led to a verdict that could have not been justly reached. In sum, the denial of defendant's motion for a mistrial was not error clearly capable of producing an unjust result. *Id.* at 647–48, 477 *A.*2d 323. *See also R.* 2:10–2.

 Further, the trial court's decision to grant Hernandez's motion for a mistrial and to deny defendant's motion for a mistrial did not violate defendant's constitutional right to equal protection of the law. Equal protection of the law simply requires that all persons similarly situated be dealt with alike. It prohibits arbitrary discrimination between persons similarly circumstanced. *Auto–Rite Supply Co. v. Mayor and Tp. Committeemen of Woodbridge Tp.,* 41 *N.J.Super.* 303, 311, 124 *A.*2d 612 (1956), *aff'd,* 25 *N.J.* 188, 135 *A.*2d 515 (1957). The trial court specifically informed the jury that the arrest testified to by Detective Murray referred to Hernandez, and not to defendant. Because defendant

and Hernandez were not similarly circumstanced, the trial court's decision to grant Hernandez's motion for a mistrial and to deny defendant's motion for a mistrial did not violate defendant's right to equal protection of the law.

## V.

We are also satisfied from our study of the record that the evidence was sufficient for a jury to find beyond a reasonable doubt that defendant was guilty of possession of cocaine with intent to distribute under the First Count, possession of cocaine with intent to distribute it within 1,000 feet of school property under the Second Count, and possession of cocaine under the Third Count. The trial court, in denying defendant's motion, focused on the fact that (1) the narcotics found in the air-conditioning unit were in the possession of no occupant more than any other; (2) defendant had two fifty-dollar bills to which the State's expert testified was a common amount which is used to purchase half-grams of cocaine; and (3) defendant was in close proximity to the dashboard where the narcotics were found.

The concept of constructive possession was summarized in *State v. Shipp*, 216 *N.J.Super.* 662, 664–65, 524 *A.*2d 864 (App.Div.1987).

> Possession can either be actual or constructive. For constructive possession, which can be jointly shared by several persons, "[p]hysical or manual control of the proscribed item is not required as long as there is an intention to exercise control over it manifested in circumstances where it is reasonable to infer that the capacity to do so exists." *State v. Brown*, 80 *N.J.* 587, 597 [404 *A.*2d 1111] (1979). Criminal possession signifies "intentional control and dominion, the ability to affect physically and care for the item during a span of time," *State v. Davis*, 68 *N.J.* 69, 82 [342 *A.*2d 841] (1975), accompanied by knowledge of its character, *State v. Reed*, 34 *N.J.* 554, 557 [170 *A.*2d 419] (1961). As a "general proposition," criminal possession may not be inferred from defendant's mere presence at the location where the contraband was found. *State v. Brown, supra*, 80 *N.J.* at 593 [404 *A.*2d 1111]. To justify such an inference there must be "other circumstances or statements of the defendant tending to permit such an inference to be drawn." *Ibid.* (quoting from the dissenting opinion in *State v. Sapp*, 144 *N.J.Super.* 455, 461 [366 *A.*2d 335] (App.Div.1975), rev'd on dissenting opinion below, 71 *N.J.* 476 [366 *A.*2d 334] (1976)). *See also, State v. Rajnai*, 132 *N.J.Super.* 530, 535–36 [334 *A.*2d 364] (App.Div.1975).

Based on the State's proof and the reasonable inferences to be drawn therefrom, a reasonable jury could find defendant guilty

beyond a reasonable doubt of constructive possession of the cocaine found in the vehicle. The fact that other drugs were discovered hidden in the air-conditioning vent supports the inference that the narcotics were constructively possessed by all of the passengers because no one possessed the narcotics more than any other person. According to expert testimony, the packaging of the narcotics located in the air conditioning unit, which was identical to the packaging of the envelope found in the rear seat, was consistent with an intent to distribute. The State's expert also testified that the total quantity of drugs and its packaging supported a theory that each of the occupants of the vehicle, including defendant, possessed the narcotics. Though the total quantity of drugs was worth only a maximum of $1,800, a jury could still reasonably find from the facts and expert testimony "that the cargo was so valuable that [the driver] would not have taken on passengers unless they not only knew it was there but also possessed it." *State v. Baker*, 228 *N.J.Super.* 135, 143, 549 *A.*2d 62 (App.Div.1988). Additionally, although the single bag of cocaine found in the rear seat was closest to Rodriguez, it was also within defendant's reach.

Consequently, the trial court properly denied defendant's motion for a judgment of acquittal at the close of the State's case. *See State v. Reyes*, 50 *N.J.* 454, 458–59, 236 *A.*2d 385 (1967); *State v. Perry*, 124 *N.J.* 128, 180–81, 590 *A.*2d 624 (1991) (Stein, J., concurring in part, dissenting in part); *State v. Gaines*, 135 *N.J.Super.* 240, 247–48, 343 *A.*2d 118 (App.Div.1975), *aff'd o.b.*, 75 *N.J.* 83, 379 *A.*2d 1275 (1977). Moreover, the jury verdict finding defendant guilty of all three counts of the indictment was not a miscarriage of justice under the law. *R.* 2:10–1. *See State v. Carter*, 91 *N.J.* 86, 96, 449 *A.*2d 1280 (1982); *State v. Sims*, 65 *N.J.* 359, 373–74, 322 *A.*2d 809 (1974).

## VI.

The other issues raised by defendant are without merit and require no further discussion. *R.* 2:11–3(e)(2).

## VII.

Accordingly, the judgment of conviction and order for commitment under review are affirmed.