743 A.2d 876 (2000)
327 N.J.Super. 436
STATE of New Jersey, Plaintiff-Respondent,
v.
Marlon A. MARYLAND, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1999.
Decided January 21, 2000.
*880 Frank J. Pugliese, Assistant Deputy Public Defender, for defendant-appellant (Ivelisse Torres, Public Defender, attorney; Mr. Pugliese, of counsel and on the brief).
Steven J. Kaflowitz, Assistant Prosecutor, for plaintiff-respondent (Thomas V. Manahan, Union County Prosecutor, attorney; Michael Henn, Assistant Prosecutor, of counsel and on the brief).
Before Judges STERN, KESTIN and STEINBERG. *877 *878
*879 The opinion of the court was delivered by STEINBERG, J.A.D.
Union County Indictment No. 96-3-408 charged defendant Marlon A. Maryland with fourth-degree possession of marijuana in excess of fifty grams, N.J.S.A. 2C:35-10-(a)(3)(count one); third-degree possession of more than one ounce of marijuana with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (count two); third-degree possession of marijuana with the intent to distribute within 1,000 feet of property owned by or leased to an elementary or secondary school or school board which is used for school purposes, N.J.S.A. 2C:35-7(count three); and fourth-degree resisting arrest, N.J.S.A. 2C:39-2(a)(count four). After denial of his motion to suppress evidence, defendant entered a plea of guilty to count three. Pursuant to the plea agreement defendant was sentenced to five years imprisonment with thirty months to be served without parole. The appropriate monetary penalties, assessments, and driver's license revocation were also imposed. The remaining counts of the indictment were dismissed. Defendant appeals from the denial of his motion to suppress and the sentence imposed. We affirm.
According to the State's proofs at the suppression hearing, on October 2, 1995, New Jersey Transit Police Officers Paul Marshall and Patrick Clark were assigned to "vandalism and graffiti" duty at the Rahway Train Station. Both officers were dressed as if they were commuters, in plain clothes. According to Marshall, a train stopped on the westbound platform and defendant and two other individuals exited the train. He observed defendant place a brown paper bag into his "waistband area". Marshall felt it was unusual for someone to "stick something into his waist area like that". Marshall and Clark decided to follow them as they walked down the stairwell. Marshall said that when they got to the bottom of the stairwell, he "came around the front of them", identified himself and said he would like to speak with them. Although he testified that defendant was free to leave, he also said that he instructed defendant that he "wanted to talk to him". He testified that he wanted to speak to defendant because it was unusual for someone to place an object into his waistband area and his suspicions were aroused. He felt defendant was attempting to conceal either a weapon or a controlled dangerous substance. He said he feared for his safety because of the possibility that defendant was attempting to conceal a weapon.
Marshall asked defendant his name and where he was coming from. Defendant told Marshall his name, and said he was coming from Jersey City. Since Marshall knew that trains did not come directly from Jersey City to Rahway, his suspicions were further aroused. At that point, Marshall was speaking to defendant and a juvenile. Clark was speaking to the third individual. Marshall asked, "are you carrying anything you shouldn't be carrying?" According to Marshall, the juvenile put his hands up to indicate he was not carrying anything, and defendant turned his body "as if to turn away ... and at the same time [took] his hand and he takes where the bag was and he tries to push it down *881 into his pants. At that point I immediately reached around and grabbed his hands... for my own safety". Marshall said that as he observed defendant place the bag "down further into his waistband" Marshall immediately reached "in and I grabbed. As I pulled out, he's pushing me, and at the same time this bag is coming out". Marshall said defendant had shoved him to the ground and the contents of the bag "spilled out". There were several small plastic bags containing what was ultimately identified as marijuana.
The juvenile, K.R., testified on defendant's behalf at the suppression hearing. He said that he and defendant got off the train. He further testified that defendant had a radio in his hands, and did not have "anything in any other hand". When they were approximately five to six feet away from the steps, two individuals "came behind us and just grabbed us and told us to get against the wall. They identified themselves as policemen". He said they complied and the officers "patted" him "down", and went through his pockets. He said he turned his head and observed the officers "patting" defendant "down", conducting "a thorough search, went through his pockets, checked under his arms, went through his belt" and retrieved a brown bag from "below the belt area". He further testified that from the time he and defendant got off the train and the time they were ultimately stopped, he never saw the brown bag.
Defendant also testified at the suppression hearing and admitted having the brown bag inside his pants in the area of his groin. He denied rearranging the bag in his pants after he got off the train. Defendant testified that the officers stopped them and asked where they were coming from. He said that when he responded "Jersey City" the officers threw them against the wall and searched defendant, retrieving the brown paper bag from his pants.
On this appeal, defendant raises the following arguments:
POINT I SUPPRESSION OF THE EVIDENCE SHOULD HAVE BEEN GRANTED BECAUSE THE STATE DID NOT MEET ITS BURDEN OF ESTABLISHING THE VALIDITY OF THE WARRANTLESS SEARCH AND SEIZURE.
POINT II THE COURT FAILED TO APPLY AND WEIGH ALL OF THE RELEVANT SENTENCING FACTORS IN THIS CASE, AND THEREFORE, THE SENTENCE IMPOSED UPON DEFENDANT IS MANIFESTLY EXCESSIVE. ADDITIONALLY, THE MATTER MUST BE REMANDED BECAUSE THE RECORD DOES NOT ESTABLISH THAT DEFENDANT WAS WITHIN 1000 FEET OF PROPERTY USED FOR SCHOOL PURPOSES, NOR DOES THE RECORD REVEAL THE PROSECUTOR'S REASONS FOR NOT WAIVING THE PAROLE BAR PURSUANT TO N.J.S.A. 2C:35-12.
A. The Court Failed To Apply And Weigh All Of The Relevant Sentencing Factors In This Case.
B. The Matter Must Be Remanded Because The Record Does Not Establish That Defendant Was Within 1000 Feet Of Property Used For School Purposes, Nor Does The Record Reveal The Prosecutor's Reasons For Not Waiving The Parole Bar Pursuant To N.J.S.A. 2C:35-12.
Initially, defendant contends that the motion judge erred in finding the officers' version of the facts credible and, therefore, incorrectly denied the motion to suppress. In support of that contention, defendant argues that the initial report prepared by Marshall did not mention the fact that he observed defendant place the brown paper bag in his waistband when he initially observed him.[1] According to defendant, a *882 subsequent police report was prepared by Clark which mentioned the police observation and notes that defendant was observed placing the brown bag in his waistband as he exited the train. In addition, defendant contends that since the State's brief also does not mention the officer's observations that defendant placed the brown paper bag in his waistband upon exiting the station, the supplemental report was prepared only after the officers met with the assistant prosecutor in preparation for the motion. We note, however, that there is no indication in the record as to when the supplemental report was prepared. Significantly, the officers were not asked, upon cross-examination, when it was prepared.
Defendant also points out other discrepancies between the reports and the testimony. These arguments were all made when the motion was heard and the motion judge concluded that they were of no consequence when he resolved the credibility issue in favor of the State.
In reviewing the factual determinations of the motion judge, we must give deference to those findings which were substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case which we do not enjoy upon review. State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234 (1999); State v. Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964). We must determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record as a whole. State v. Locurto, supra, 157 N.J. at 471, 724 A.2d 234; State v. Johnson, supra, 42 N.J. at 162, 199 A.2d 809. If we are satisfied that the findings and result meet this criterion, our task is complete and we may not disturb the result, even though we feel we may have reached a different conclusion. Ibid. We may only intervene if we are thoroughly satisfied that the finding is clearly mistaken and so plainly unwarranted that the interests of justice demand intervention and correction. Ibid. Ordinarily, we should defer to a trial judge's credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record. State v. Locurto, supra, 157 N.J. at 474, 724 A.2d 234; State v. Johnson, supra, 42 N.J. at 161, 199 A.2d 809. In that context, we have thoroughly reviewed the record and conclude that the findings made by the motion judge could reasonably have been reached on sufficient credible evidence present in the record as a whole, and we accept them.
The Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution are not guarantees against all searches and seizures, but only against those that are unreasonable. State v. Davis, 104 N.J. 490, 498-99, 517 A.2d 859 (1986); State v. Goodson, 316 N.J.Super. 296, 302, 720 A.2d 381 (App.Div.1998). It is well-settled that a temporary street-detention based on less than probable cause may be constitutionally permissible. Terry v. Ohio, 392 U.S. 1, 26-27, 88 S.Ct. 1868, 1882-83, 20 L.Ed.2d 889, 909 (1968); State v. Davis, supra, 104 N.J. at 502-04, 517 A.2d 859. However, the stop[2] of the individual must be predicated upon a specific and articulable reasonable suspicion that the person has been or is about to engage in criminal activity. United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981); State v. Davis, supra, 104 N.J. at 504, 517 A.2d 859; State v. Butler, 278 N.J.Super. 93, 102, 650 A.2d 397 (App.Div.1994). "[I]n justifying the particular intrusion the police *883 officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion". Terry v. Ohio, supra, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; State v. Davis, supra, 104 N.J. at 504, 517 A.2d 859; State v. Zapata, 297 N.J.Super. 160, 171, 687 A.2d 1025 (App.Div.1997), certif. denied, 156 N.J. 405, 719 A.2d 637 (1998). The touchstone of the Fourth Amendment is reasonableness. State v. Zapata, supra, 297 N.J.Super. at 171, 687 A.2d 1025. Moreover, Fourth Amendment issues are complex, fact-sensitive, and are, therefore, "peculiarly dependent upon the facts involved". Ibid. Each case must turn on its own facts. State v. Davis, 50 N.J. 16, 22, 231 A.2d 793 (1967).
The reasonableness of the police conduct in conducting an investigatory stop in light of the Fourth Amendment is generally assessed by "balancing the need to search [or seize] against the intrusion which the search [or seizure] entails". Terry v. Ohio, supra, 392 U.S. at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 905; State v. Arthur, 149 N.J. 1, 7, 691 A.2d 808 (1997). If the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate, the search or seizure must be upheld. Terry v. Ohio, supra, 392 U.S. at 21-2, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; State v. Arthur, supra, 149 N.J. at 7-8, 691 A.2d 808. The officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. Ibid.; State v. Arthur, supra, 149 N.J. at 8, 691 A.2d 808. The level of reasonable suspicion necessary to justify an investigatory stop is "something less than the probable cause standard needed to support an arrest". State v. Arthur, supra, 149 N.J. at 8, 691 A.2d 808; State v. Thomas, 110 N.J. 673, 678, 542 A.2d 912 (1988). The determination whether an articulable reasonable suspicion exists to undertake an investigatory stop of a person is based on an objective-reasonableness standard. State v. Arthur, supra, 149 N.J. at 15, 691 A.2d 808.
It is also well-settled that the police may arrest only if they have probable cause; may stop for brief investigatory questioning if they have an articulable, reasonable basis for suspicion; and they may make an inquiry without any grounds for suspicion. Florida v. Royer, 460 U.S. 491, 497-99, 103 S.Ct. 1319, 1324-25, 75 L.Ed.2d 229, 236-37 (1983) (plurality opinion); State v. Alexander, 191 N.J.Super. 573, 576, 468 A.2d 713 (App.Div.1983), certif. denied, 96 N.J. 267, 475 A.2d 570 (1984). However, placing a particular encounter in one or another of the categories requires a careful examination of the facts in each case to determine, and balance, the seriousness of the criminal activity under investigation, the degree of police intrusion and the extent of the citizen's consent, if any, to that intrusion. State v. Alexander, supra, 191 N.J.Super. at 576-77, 468 A.2d 713. Moreover, there is no "litmus-paper test" that covers all circumstances. Florida v. Royer, supra, 460 U.S. at 506, 103 S.Ct. at 1329, 75 L.Ed.2d at 242; State v. Alexander, supra, 191 N.J.Super. at 577, 468 A.2d 713. In addition, to further complicate the analysis, as the situation develops a single encounter may quickly escalate from an "inquiry" to a "stop" to an "arrest" requiring the criteria for each category to be applied as the situation moves from one category to the other. State v. Alexander, supra, 191 N.J.Super. at 577, 468 A.2d 713.
A police officer charged with the duty of crime prevention and detection and protection of the public safety must deal with a rich diversity of street encounters with citizens. State v. Sheffield, 62 N.J. 441, 446, 303 A.2d 68, certif. denied, 414 U.S. 876, 94 S.Ct. 83, 38 L.Ed.2d 121 (1973). Accordingly, even though a citizen's behavior does not reach the level of a reasonable articulable suspicion that he is engaged in, or about to engage in criminal *884 activities, the officer's experience may still indicate that some investigation is in order. Ibid. Depending on the circumstances, street interrogation may be most reasonable and proper. Ibid. Police officers are trained in the prevention and detection of crime and events which would go unnoticed by a layman and ofttimes serve as an indication to the trained investigative eye that criminal activity might be taking place, or is about to take place. State v. Gray, 59 N.J. 563, 567-68, 285 A.2d 1 (1971). Therefore, the officer's suspicions should not be given grudging recognition. State v. Sheffield, supra, 62 N.J. at 445, 303 A.2d 68. The police would be derelict in their duties if they did not investigate such events.
In reviewing the actions of a police officer in an encounter with a private citizen, we must always be mindful that the officer, who is not a constitutional lawyer, is often required to act on the spur of the moment. State v. Contursi, 44 N.J. 422, 431, 209 A.2d 829 (1965). Accordingly, the Fourth Amendment requires only that their actions be reasonable under the totality of the circumstances. State v. Owens, 102 N.J.Super. 187, 199, 245 A.2d 736 (App.Div.1968), aff'd, 54 N.J. 153, 254 A.2d 97 (1969), certif. denied, 396 U.S. 1021, 90 S.Ct. 593, 24 L. Ed.2d 514 (1970). "Judicial review of police action taken in the face of a fast-moving, excited situation must be `in a commonsense and realistic fashion'". There is a two-part test which is designed to measure the reasonableness of an investigative stop against the intrusion on the detainee's right to be secure from unreasonable searches. Terry v. Ohio, supra, 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905; State v. Dickey, 152 N.J. 468, 476, 706 A.2d 180 (1998). The reviewing court must first consider whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. "In evaluating whether an officer has acted reasonably under the circumstances, `due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.'" Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909; State v. Butler, 278 N.J.Super. 93, 103, 650 A.2d 397 (App.Div.1994). We recognize that a valid Terry stop does not automatically justify a police officer's protective search for weapons. State v. Valentine, 134 N.J. 536, 542, 636 A.2d 505 (1994); State v. Thomas, 110 N.J. 673, 678-79, 542 A.2d 912 (1988). Whether a police officer's protective search for weapons is justified is a separate question from whether the stop was permissible in the first place. Ibid.
In beginning our analysis, we emphasize that this case does not involve a full search of defendant's person. Nor does it involve what is commonly referred to as a frisk or pat-down in an effort to determine whether defendant was armed. Based on the trial judge's factual findings, it involves Marshall's reaching towards defendant's waistband area as defendant turned and appeared to place his hand further into the waistband where Marshall had previously observed defendant secrete an object. We must determine whether Marshall's actions were reasonable under the totality of the circumstances. In determining the reasonableness of Marshall's actions, we must weigh the public interest served against the nature and scope of the intrusion upon defendant. Doe v. Poritz, 142 N.J. 1, 28 fn. 8, 662 A.2d 367 (1995); State v. Davis, supra, 104 N.J. at 502-03, 517 A.2d 859.
Neither the Fourth Amendment nor Article I, paragraph seven, is violated when the police merely approach an individual and ask him if he is willing to answer questions, and by asking those questions if the individual is willing to listen, or by offering into evidence his voluntary answers to such questions. State v. Davis, supra, 104 N.J. at 497, 517 A.2d 859; State in Interest of J.G., 320 N.J.Super. *885 21, 28, 726 A.2d 948 (App.Div.1999). Mere field interrogation, or inquiry, without more, does not constitute a stop provided the officer does not deny the detainee the right to move. The critical inquiry is whether the policeman, although perhaps making inquiries which a private citizen would not be expected to make, has otherwise conducted himself in a manner consistent with what would be viewed as a non-offensive contact if it occurred between two ordinary citizens. W.R. Lafave, 4 Search and Seizure, § 9.3(a) at 101, cited with approval in State v. Davis, supra, 104 N.J. at 497 n. 6, 517 A.2d 859. Thus, an officer has not seized or stopped another if his questions were put in a conversational manner, he did not make demands or issue orders, and his questions were not overbearing or harassing in nature. W.R. Lafave, 4 Search and Seizure, supra, at 101. State v. Sheffield, supra, 62 N.J. at 447, 303 A.2d 68; State in Interest of J.G., supra, 320 N.J.Super. at 28, 726 A.2d 948. However, an inquiry which may be conducted for any reason is converted into a stop which must be based upon a reasonable articulable suspicion that the detainee is engaged in, or about to engage in criminal activity when the police act in such a way that a reasonable person would believe that he or she is not free to leave. State v. Citarella, 154 N.J. 272, 280, 712 A.2d 1096 (1998).
Whether the officer's conduct passes constitutional muster must be preliminarily analyzed by determining whether there was a mere field inquiry, or a stop. State in Interest of J.G., supra, 320 N.J.Super. at 31-32, 726 A.2d 948; State v. L.F., 316 N.J.Super. 174, 181, 719 A.2d 1272 (App. Div.1998).
We recently held that a field inquiry becomes a stop once an officer makes "unsupported outright accusations of criminal activity". State in Interest of J.G., supra, 320 N.J.Super. at 31, 726 A.2d 948. See also Lafave, 4 Search and Seizure, supra, § 9.3(a). We there held that asking a detainee whether he was carrying anything "that I should know about" or whether the detainee had anything "that he shouldn't have" converted an inquiry into a stop. State in Interest of J.G., supra, 320 N.J.Super. at 31, 726 A.2d 948. We held that those questions were unduly authoritative, indicative of criminal suspicion and converted the field inquiry into a Terry stop which would require a reasonable and articulable suspicion prior to the commencement of a search which was based upon consent. Id. at 31-32, 726 A.2d 948. Here, Marshall's question "are you carrying anything you shouldn't be carrying?" is very similar to the question asked by the officer in State in Interest of J.G., supra. Even accepting J.G.'s analysis that this question converted the inquiry into a stop, we conclude that Marshall's actions were based upon a reasonable articulable suspicion that defendant was armed. A police officer is not required to take unnecessary risks in the performance of his duties. Terry v. Ohio, supra, 392 U.S. at 23, 88 S.Ct. at 1881, 20 L.Ed.2d at 907. When an officer fears for his or her safety, the officer may be justified in taking action to ensure that the suspect does not engage in harmful conduct. State v. Johnson, 274 N.J.Super. 137, 154, 643 A.2d 631 (App.Div.) certif. denied, 138 N.J. 265, 649 A.2d 1285 (1994). See also State v. Otero, 245 N.J.Super. 83, 92, 584 A.2d 260 (App.Div.1990)(officers justified in requesting that occupants of the vehicle place their hands on the dashboard). In determining whether the officer acted reasonably under the circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.
Giving some, although not controlling deference to the officer's suspicions, we conclude that Marshall had a reasonable articulable suspicion that defendant was armed. Therefore, even though his question *886 may have converted the inquiry into a stop, we conclude that the stop passed constitutional muster. Arguably, a police officer who has a reasonable articulable suspicion that a person on the street is armed has a duty to investigate. State in Interest of C.B, 315 N.J.Super. 567, 576, 719 A.2d 206 (App.Div.1998); State v. Sharpless, 314 N.J.Super. 440, 452, 715 A.2d 333 (App.Div.), certif. denied, 157 N.J. 542, 724 A.2d 802 (1998). We recognize that we recently held that the mere act of putting something from ones hands into ones own pocket while departing, without more, does not constitute a reasonable articulable suspicion that a person is armed. State v. L.F., supra, 316 N.J.Super. at 179, 719 A.2d 1272. However, in L.F., the officer never stated that he suspected the detainee was armed. In fact, he conceded that he did not consider the detainee to be a threat to him. Id. at 180, 719 A.2d 1272. Here, unlike L.F., supra, Marshall testified that he suspected that defendant was attempting to conceal either a weapon or a controlled dangerous substance when he initially observed defendant place the brown paper bag into his waistband area. We conclude that that articulated concern was reasonable.
Having concluded that even if the encounter constituted a stop and it was constitutionally permissible, we must next consider whether Marshall's actions were reasonably related in scope to the circumstances which justified the interference in the first place. Terry v. Ohio, supra, 392 U.S. at 20, 88 S.Ct. at 1878, 20 L.Ed.2d at 905; State v. Dickey, supra, 152 N.J. at 476, 706 A.2d 180. We readily conclude that Marshall's actions were reasonably related in scope to his suspicion that defendant may have been armed. The events were developing quickly and were somewhat escalated by defendant's actions in turning his body and attempting to push the bag further down into his pants. Marshall was not constitutionally required to assume that there was no danger because defendant appeared to be pushing the bag further down into his pants rather than attempting to retrieve something from his waistband. Marshall was justified in taking an intermediate approach by attempting to grab defendant's hands to maintain the status quo. When the contraband simultaneously fell from defendant's pants, Marshall justifiably seized it. In essence, the motion judge made credibility findings that Marshall saw defendant "make a turning movement and reaching toward his belt area", and concluded that "Marshall had a right and reasonable basis to believe a weapon might be in that area, based upon his experience as a police officer where he seized weapons in the past". He further found that the drugs "came out" as the officer "reached toward that area to attempt to make sure that there's no weapons". Based on those findings, we cannot conclude that the judge erred in denying defendant's motion to suppress. State v. Locurto, supra, 157 N.J. at 470-71, 724 A.2d 234.
We have carefully considered the record, the briefs filed, the applicable law, and the arguments of counsel and conclude that the arguments raised by defendant in Point II are without merit. See R. 2:11-3(e)(2). We comment briefly.
The State correctly concedes that the prosecutor did not state on the record the reasons for the decision to waive or refuse to waive the period of parole ineligibility. State v. Vasquez, 129 N.J. 189, 196, 609 A.2d 29 (1992). While we recognize that defendant did not object to the failure of the prosecutor to waive the period of parole ineligibility, Vasquez gives a defendant who can clearly and convincingly show that the exercise of discretion was arbitrary and capricious an entitlement to relief. Ordinarily we would remand to require the prosecutor to comply with the obligation imposed by State v. Vasquez, supra. However, defendant has already served the period of parole ineligibility, having been sentenced on July 25, 1997, and been awarded 196 days of credit pursuant to R. 3:21-8. Accordingly, any issues *887 that may arise from the prosecutor's failure to state the reasons for the decision to waive or refuse to waive the period of parole ineligibility are now moot.
Affirmed.[3]
KESTIN, J.A.D., dissenting.
I know of no reason why any person stepping from a train onto a station platform should apprehend a police response of any kind if he or she decides to place any object not apparently contraband out of sight on his or her person upon emerging. Fundamental considerations of personal privacy insulate each of us against government intrusion on our persons, effects and affairs, at least to such an extent as to protect against police conduct that has no adequate, objectively verifiable basis. These principles apply in the same way to safeguard a young, casually dressed, Black male carrying a radio, as they do to shield a middle-aged Caucasian in business attire carrying a brief case.
Pertinent standards require the police to have an articulable basis for confronting a citizen, even for a simple inquiry.[*] If it were otherwise, we would have crossed the threshold from a free society to a police state. And, it is axiomatic that the essential basis be adequately definable as to allow for objective assessment. Otherwise, the courts as the system's arbiters would have no role to play in evaluating the police conduct at issue in the earliest stages of the confrontation.
In discharging our evaluative role, judges must assess a situation fairly and realistically, bringing to bear experience and objective, mature focus. It is not enough to see a matter as passing muster simply because a police officer has used the right words in describing the incident and because police officers, in general, are regarded as highly credible. Judges do not exist to give "rubber stamp" approval to police conduct. Rather, the entire situation must be viewed with a fair measure of common sense and balance, characterized by genuine fidelity to prevailing rules and their underlying fundamental policies. Where there was no good reason for the police to stop a citizen and make an inquiry, a judge must say so. See, e.g., State v. Contreras, 326 N.J.Super. 528, 742 A.2d 154 (App.Div.1999); State ex rel. J.G., 320 N.J.Super. 21, 27, 726 A.2d 948 (App.Div.1999).
I do not view this matter in the same way my colleagues do, as one calling for deference to the trial court judge's credibility determinations and factual findings. Rather, I see it as an instance in which the judge applied a legal standard in a way which has no respectable provenance in our jurisprudence. My colleagues and I may have few or no differences in identifying the rules that govern situations such as this; our primary point of disagreement may only be on how those rules are to be employed in the specific situation at hand. For me, the entire scenario is governed by a straightforward, syllogistic implementation of the policies which inform the standards *888 that have been developed, and not by approaches that resemble the application of complex mathematical formulas.
There was, simply, nothing in the circumstances described that justified the stop and inquiry of defendant as he stepped from the train onto the station platform. Every other significant factual event flowed as a consequence from that action. Therefore, nothing that occurred after the invalid stop may be seen to have generated competent evidence.
The motion to suppress should have been granted. I would reverse the trial court's denial of that motion and vacate the conviction on which eventuated as a result.
NOTES
[1] We note, however, that Marshall's initial report does not mention when he first observed defendant at all.
[2] We note that some of the reported decisions use the terms stop, investigative detention, investigatory stop, and temporary street detention interchangeably. Whenever those terms are used in this opinion, they are meant to equate with a stop.
[3] Subsequent to the filing of his brief, by letter dated April 30, 1999, defendant requests that we remand the matter in order to permit defense counsel to question the officers regarding a potential "racial profiling defense". We conclude that defendant has not made a sufficient showing to justify a remand.
[*] Any attempt to distinguish between a "`stop' for brief investigatory questioning" as requiring "an articulable, reasonable basis for suspicion" and an "inquiry" which may be made "without any grounds for suspicion," see State v. Alexander, 191 N.J.Super. 573, 576, 468 A.2d 713 (App.Div.1983), certif. denied, 96 N.J. 267, 475 A.2d 570 (1984), falls of its own weight. The articulation of a difference between the two actions makes no sense. One can only wonder how, physically, an "inquiry" can be made without an accompanying "stop" and what, metaphysically, differentiates an "inquiry" from "brief investigatory questioning." "[A person] may not be detained even momentarily [beyond asking him if he is willing to answer some questions] without reasonable, objective grounds for doing so[.]" Florida v. Royer, 460 U.S. 491, 497-98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983) (plurality opinion).