765 A.2d 770 (2001)
336 N.J. Super. 550
STATE of New Jersey, Plaintiff-Respondent,
v.
Raul RODRIGUEZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 13, 2000.
Decided February 2, 2001.
*772 Joel M. Harris, First Assistant Public Defender, for appellant (M. Virginia Barta, Assistant Deputy Public Defender, on the brief).
Jeffrey S. Blitz, Atlantic County Prosecutor, for respondent (Jack R. Martin, Assistant County Prosecutor, of counsel and on the brief).
*773 Before Judges KEEFE and STEINBERG.
*771 The opinion of the court was delivered by STEINBERG, J.A.D.
The sole issue raised by defendant on this appeal is his contention that the motion judge erred in denying his motion to suppress evidence. We disagree and affirm.
Atlantic County Indictment No. 98-08-1916-B charged defendant Raul Rodriguez and his co-defendant Joseph Forte with third-degree unlawful possession of a controlled dangerous substance, heroin, (N.J.S.A. 2C:35-10(a)(1)) (Count 1); third-degree unlawful possession of a controlled dangerous substance, heroin, with the intent to distribute, (N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3)) (Count 2), and third-degree unlawful possession with the intent to distribute a controlled dangerous substance, heroin, within one thousand feet of school property (N.J.S.A. 2C:35-7) (Count 3).
After the denial of his motion to suppress, defendant entered a plea of guilty to Count Three. Pursuant to N.J.S.A. 2C:43-6(f), the judge sentenced defendant to a mandatory extended term as a subsequent drug offender. He imposed a sentence of six years of incarceration with three years of parole ineligibility, and also suspended defendant's driver's license for two years. The judge imposed the appropriate monetary penalties and assessments. The sentence was made to run concurrently with a sentence defendant was then serving.
The facts critical to our resolution of the issue raised by defendant on appeal are the following. On July 14, 1998, New Jersey Police Officer Eugene Oberfrank received an anonymous telephone call at the desk phone in the "Patrol Office." The caller indicated that two men had left Ocean City to go to Philadelphia to buy narcotics. The first man was described as a thin Hispanic male, approximately five feet, ten inches, wearing white shorts, a white T-shirt and gold-rimmed glasses. The second person was described as a heavy-set Caucasian male, six feet tall, wearing a black tank top and dark shorts, with a receding hair line and mustache. The caller did not provide a time when the individuals were expected to return. However, Oberfrank said that "judging by the time ... they left Ocean City", he expected them to return between 3:30 and 5:00. The caller further stated that the men would be returning through Atlantic City. The caller refused to provide Oberfrank his name. Oberfrank reported the conversation to his duty supervisor, Sergeant Kevin Amberg.
Oberfrank testified that at approximately 4:55 p.m., he observed two individuals get off a Philadelphia bus. He felt they matched the description provided by the anonymous caller, and pointed them out to Amberg. He said they got off the bus together, and left in the same direction towards a set of pay phones. One of the men started to make a telephone call. Amberg and Oberfrank approached them and asked them "would they mind talking to [them]." The men said they would be willing to talk to the officers. The officers asked defendants if they would mind coming back to the Patrol Office. After looking at his report to refresh his recollection, Oberfrank testified that he told defendants that "they didn't have to go with us or talk to us."
The officers separated Rodriguez and Forte when inside the office. Rodriguez was placed in the main processing room and Forte was placed in the adjoining auxiliary room. Rodriguez was carrying a blue Gap shopping bag. The officers asked defendants "if they had anything on them ... they shouldn't have." Oberfrank then heard Amberg ask Rodriguez if he would consent to a search of his person and property. In addition, Oberfrank heard Amberg advise Rodriguez that he did not have to consent to a search. According *774 to Oberfrank, Rodriguez consented. Furthermore, Oberfrank observed Amberg provide Rodriguez with a consent to search form, and read it to Rodriguez. The form specifically noted that Rodriguez had been advised by Amberg that he had a right to refuse to consent to a search. Rodriguez signed the form. The officers found one packet of heroin in one of Rodriguez's socks, and another packet of heroin in a front pocket of his shorts. They also found a hypodermic needle and "numerous other bags of heroin" in the Gap bag. In addition, they found $637 of currency on Rodriguez.
Amberg's testimony essentially corroborated the testimony of Oberfrank. Although Amberg did not recall whether Rodriguez and Forte were advised that they did not have to accompany them to the office, he said they were told several times that they did not have to speak with the officers if they did not want to. In addition, he said defendants were not told they had to go to the office. They were asked if they would go to the office. He said he did not so advise them, but Oberfrank "was doing all of the talking." Amberg also said that two of the packets found in the Gap bag were empty.
The motion judge denied the motion, concluding that the officers had a reasonable, articulable suspicion, based on the anonymous tip, to make an investigatory stop. He further determined that defendants were advised that they did not have to talk with the officers or accompany them to their office. He also found that they were specifically advised that they did not have to consent to a search. Finally, he concluded that defendants' consent to a search was voluntary, and, therefore, he denied the motion.
We recently made the following observations considering our role in reviewing the factual determinations of a trial or motion judge:
[W]e must give a deference to those findings which were substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case which we do not enjoy upon review. State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234 (1999); State v. Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964). We must determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record as a whole. State v. Locurto, supra, 157 N.J. at 471, 724 A.2d 234; State v. Johnson, supra, 42 N.J. at 162, 199 A.2d 809. If we are satisfied that the findings and result meet this criterion, our task is complete and we may not disturb the result, even though we feel we may have reached a different conclusion. Ibid. We may only intervene if we are thoroughly satisfied that the finding is clearly mistaken and so plainly unwarranted that the interests of justice demand intervention and correction. Ibid. Ordinarily, we should defer to a trial judge's credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record. State v. Locurto, supra, 157 N.J. at 474, 724 A.2d 234; State v. Johnson, supra, 42 N.J. at 161, 199 A.2d 809.
[State v. Maryland, at 327 N.J.Super. 436, 447, 743 A.2d 876 (App.Div.2000).]
In that context, we have thoroughly reviewed the record and conclude that the findings made by the motion judge could reasonably have been made on sufficient credible evidence present in the record as a whole, and, accordingly, we accept them.
The Fourth Amendment of the United States Constitution, and Article I, paragraph 7 of the New Jersey Constitution, are not guarantees against all searches and seizures, but only against those that are unreasonable. State v. Davis, 104 N.J. 490, 498-99, 517 A.2d 859 (1986); State v. Maryland, supra, 327 N.J.Super. at 447, 743 A.2d 876; State v. Goodson, 316 N.J.Super. 296, 302, 720 *775 A.2d 381 (App.Div.1998). It is well-settled that the police may arrest only if they have probable cause; may stop for brief investigatory questioning if they have an articulable, reasonable basis for suspicion; and they may make an inquiry without any grounds or suspicion. Florida v. Royer, 460 U.S. 491, 497-99, 103 S.Ct. 1319, 1324-25, 75 L Ed.2d 229, 236-37 (1983); (plurality opinion); State v. Maryland, supra, 327 N.J.Super. at 449, 743 A.2d 876; State v. Alexander, 191 N.J.Super. 573, 576, 468 A.2d 713 (App.Div.1983), certif. denied, 96 N.J. 267, 475 A.2d 570 (1984). "However, placing a particular encounter in one or another of the categories requires a careful examination of the facts in each case, to determine, and balance, the seriousness of the criminal activity under investigation, the degree of the police intrusion, and the extent of the citizen's consent, if any, to that intrusion." State v. Maryland, supra, 327 N.J.Super. at 449, 743 A.2d 876, citing Alexander, supra, 191 N.J.Super. at 576-77, 468 A.2d 713. Moreover, there is no `single litmus-paper test' that covers all circumstances. Florida v. Royer, supra, 460 U.S. at 506, 103 S.Ct. at 1329, 75 L.Ed.2d at 242; State v. Alexander, supra, 191 N.J.Super. at 577, 468 A.2d 713." Finally, "to further complicate the analysis, as the situation develops a single encounter may quickly escalate from an `inquiry' to a `stop' to an `arrest' requiring the criteria for each category to be applied as the situation moves from one category to the other." Maryland, supra, 327 N.J.Super. at 449-50, 743 A.2d 876, citing Alexander, supra, 191 N.J.Super. at 577, 468 A.2d 713.
Accordingly, a temporary stop or street-detention is constitutionally permissible even though based on less than probable cause. Terry v. Ohio, 392 U.S. 1, 26-27, 88 S.Ct. 1868, 1882-83, 20 L.Ed.2d 889, 909 (1968); State v. Davis, supra, 104 N.J. at 502-04, 517 A.2d 859; Maryland, supra, 327 N.J.Super. at 448, 743 A.2d 876. If the encounter is categorized as a stop, it must be based on a specific and articulable reasonable suspicion that the person has been or is about to engage in criminal activity. United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981); State v. Davis, supra, 104 N.J. at 504, 517 A.2d 859; State v. Maryland, supra, 327 N.J.Super. at 448, 743 A.2d 876; State v. Butler, 278 N.J.Super. 93, 102, 650 A.2d 397 (App.Div.1994). As always, the touchstone of the Fourth Amendment of the United States Constitution, as well as Article I, paragraph 7 of the New Jersey Constitution is reasonableness. Maryland, supra, 327 N.J.Super. at 448, 743 A.2d 876; State v. Zapata, 297 N.J.Super. 160, 171, 687 A.2d 1025 (App. Div.1997), certif. denied, at 156 N.J. 405, 719 A.2d 637 (1998).
The reasonableness of the police conduct in conducting an investigatory stop is assessed by balancing the need for the detention against the invasion or intrusion which the detention entails. Terry v. Ohio, supra, 392 U.S. at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 905; State v. Arthur, 149 N.J. 1, 7, 691 A.2d 808 (1997). An inquiry may be converted into an investigative detention if, given the totality of the circumstances, a reasonable person were to believe they were not free to leave. State v. Citarella, 154 N.J. 272, 280, 712 A.2d 1096 (1998); State v. Davis, supra, 104 N.J. at 498, 517 A.2d 859; State v. Costa, 327 N.J.Super. 22, 31, 742 A.2d 599 (App.Div.1999); State v. Contreras, 326 N.J.Super. 528, 538, 742 A.2d 154 (App. Div.1999); State v. Morrison, 322 N.J.Super. 147, 152, 730 A.2d 447 (App.Div.1999). In determining whether the encounter passes constitutional muster, a reviewing court must assess and evaluate the totality of the circumstances surrounding the encounter. State v. Davis, supra, 104 N.J. at 505, 517 A.2d 859.
Applying these principles of law to the facts of this case, we conclude that when Oberfrank and Amberg initially approached Rodriguez and Forte, they were merely conducting a field inquiry, which, as previously noted, may be conducted *776 for any reason at all. The encounter did not escalate into an investigative detention because defendants were clearly advised that they need not answer any questions. Moreover, the fact that defendants were asked to accompany the officers to the patrol office did not convert the encounter into an investigative detention. Defendants were not told that they had to go to the patrol office. They were merely asked if they would "mind coming back" to the office. Indeed, Oberfrank told defendants that they did not have to go with the officers or talk to them. Finally, the facts that defendants were placed in separate rooms in the patrol office and that the patrol office door shuts and locks automatically are of no consequence. Nor is the fact that no one can leave the office without a swipe card of any consequence. Indeed, there was no testimony that defendants were aware that the office door shut and locked automatically or that no one could leave without a swipe card.
The totality of the circumstances, particularly the fact that defendants were asked, rather than told to accompany the officers to a more private location, rather than endure the embarrassment of being questioned in view of the people in the bus station, coupled with the fact that the officers never demanded that the defendants accompany them, and clearly advised them that they need not answer questions, or accompany them, leads us to conclude that a reasonable person would not believe that they were not free to leave. On the contrary, defendants were specifically advised that they need not comply with the officers' request. Under these circumstances, we conclude that the encounter did not escalate into an investigative detention when defendants entered the patrol room.
Relying upon State v. King, 44 N.J. 346, 352-53, 209 A.2d 110 (1965), the judge found that defendants' consent to search was voluntary. That finding is supported by sufficient credible evidence considering the record as a whole, and we accept it. State v. Locurto, supra, 157 N.J. at 471, 724 A.2d 234; State v. Johnson, supra, 42 N.J. at 162, 199 A.2d 809. The judge also found that defendants were aware of their right to withhold consent and knowingly waived that right. State v. Johnson, 68 N.J. 349, 353-54, 346 A.2d 66 (1975). Again, that factual determination is support by the evidence.
We conclude that the consensual encounter between defendants and the officers never escalated from an inquiry to an investigative detention because the circumstances could not lead to an objective reasonable belief on the part of defendants that they were not free to leave. On the contrary, they were advised that they need not answer questions, or accompany the officers to the patrol room. In addition, they were advised that they did not have to consent to search. Hence, the State was not required to prove that the officers had a reasonable and articulable suspicion that defendants were engaged in criminal activity.
We recognize that another Panel of this court recently held that a law enforcement officer making a routine traffic stop cannot ask for consent to search without at least an articulable suspicion. State v. Carty, 332 N.J.Super. 200, 205, 753 A.2d 149 (App.Div.2000), certif. granted, 165 N.J. 605, 762 A.2d 219 (2000). Cf. State ex. rel. J.G., 320 N.J.Super. 21, 30, 726 A.2d 948 (App.Div.1999); (finding that there is no constitutional requirement of a reasonable suspicion as a prerequisite to seeking consent to search); State v. Abreu, 257 N.J.Super. 549, 555, 608 A.2d 986 (App. Div.1992) (same); State v. Allen, 254 N.J.Super. 62, 66, 603 A.2d 71 (App.Div. 1992) (same).[1] We reject any notion that *777 Carty should be extended and hold that its requirement of a reasonable articulable suspicion as a prerequisite to seeking consent to search is limited to a traffic stop. Moreover, the actions of the police in Carty had other potential constitutional infirmities.
For example, in Carty, supra, defendant, who was a passenger in a vehicle that had been stopped for speeding, was asked by a State trooper if he would permit the trooper to pat him down for his own safety before the trooper searched the vehicle pursuant to the consent authorized by the driver. The search of defendant produced narcotics. The only reason for the detention of the driver before consent to search was sought was that the driver did not have a driver's license with him, and had no registration for the car. In addition, although the driver told the trooper that the vehicle had been rented by his father, according to the trooper, no rental papers were produced. In measuring the reasonableness of an investigative stop or detention against the intrusion on the right of the detainee to be free from an unreasonable search, the court must consider "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified an appearance in the first place." Terry, supra, 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905; State v. Dickey, 152 N.J. 468, 476, 706 A.2d 180 (1998). In Carty, although the stop was valid, there was a serious question whether the continued detention of the defendant and the driver was reasonably related in scope to the circumstances which justified the initial stop. We also recognize that in a number of recent cases, we have held or suggested that a field inquiry is converted into a Terry-type stop by asking questions that are authoritative in nature, or presumed criminal conduct. See State v. Costa, 327 N.J.Super. 22, 31, 742 A.2d 599 (App.Div. 1999) (finding that questions such as "what are you doing" and "[a]re you doing something that you are not suppose to be doing out here" presuppose criminal conduct and convert a benign field inquiry into a Terry-stop); State v. Contreras, supra, 326 N.J.Super. at 540, 742 A.2d 154 (concluding that asking the defendants whether they had any contraband on them converted a field inquiry into an investigative detention); State ex rel. J.G., supra, 320 N.J.Super. at 30, 726 A.2d 948 (finding that asking questions presupposing criminal activity such as "you do not have anything you shouldn't" converts a field inquiry into a Terry-stop). To the extent those cases suggest that the mere fact that the officers ask a question that presupposes criminal activity or is accusatory in nature, automatically converts a field inquiry into a Terry-stop or investigative detention, we express our respectful disagreement. Rather, we determine that in considering whether the actions of the police officers are reasonable and pass constitutional muster, we must consider the totality of the circumstances. State v. Maryland, supra, 327 N.J.Super. at 450, 743 A.2d 876; State v. Owens, 102 N.J.Super. 187, 199, 245 A.2d 736 (App.Div.1968), aff'd, 54 N.J. 153, 254 A.2d 97 (1969), cert. denied, 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970). Accordingly, we conclude that the nature of a question asked of a person is only a factor to be considered in determining whether an encounter with the police has escalated an investigative detention. Here, considering the totality of the circumstances, including Oberfrank's testimony that not more than ten minutes elapsed from the time he saw defendants get off the bus to the time the consent to search was signed, we conclude that the encounter had not escalated into an investigative detention.
Alternatively, we conclude that even if the encounter had escalated into an *778 investigative detention, although admittedly a close call, it was supported by a reasonable articulable suspicion. While the tip may not have been sufficient to support a determination of probable cause, a reasonable articulable suspicion is something less than probable cause. State v. Arthur, supra, 149 N.J. at 8, 691 A.2d 808. "There must be `some objective manifestation that the suspect was or is involved in criminal activity.'" Ibid.
Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content then that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.
[Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301, 309 (1990).]
In White, the United States Supreme Court was satisfied that although not every detail mentioned by the anonymous caller was verified by the police, they did corroborate the fact that the suspect left a building that the caller said she would leave in a particular vehicle that was described by the caller. In addition, the caller gave a particular time when the suspect would be leaving, and the suspect was observed traveling in the direction of the predicted destination, although the officers stopped her short of that destination. Considering the totality of the circumstances, and the fact that the tip involved future actions of the suspect, ordinarily not easily predicted, the Supreme Court held that the anonymous tip, as corroborated, was supported by sufficient indicia of reliability and justified the investigatory stop of the vehicle.
In State v. Zutic, 155 N.J. 103, 113, 713 A.2d 1043 (1998), Justice Handler in dictum cited White for the proposition that although an informant's tip may not have been sufficient to constitute probable cause, it may still generate a reasonable articulable suspicion to justify an investigative stop. Our Supreme Court has held that police officer acting on an anonymous informant's tip regarding an individual in a bar who was alleged to be in possession of a unidentified narcotics was justified in making an investigatory stop of defendant in the bar, since defendant was the only person who matched the description provided by the informant, and the officer recognized him from a prior arrest for drug possession. State v. Thomas, 110 N.J. 673, 683, 542 A.2d 912 (1988). Earlier, our Supreme Court had held that police officer appropriately stopped an individual for an investigative detention after he had received a radio dispatch directing him to the area. The dispatch was based upon a tip from a member of a first aid squad, who reported that two individuals were "hanging around" a closed gasoline service station at midnight. The officer observed two men driving bicycles at midnight in close proximity to the station. Although we acknowledge that the Court was influenced, to some extent, by the fact that the caller was a member of a first aid squad and "presumably more public spirited than the average citizen", the Court did conclude that the totality of the circumstances led to a reasonable articulable suspicion that defendant may have been engaged in criminal activity and, therefore, the stop was justified. State v. Davis, supra, 104 N.J. at 505-08, 517 A.2d 859.
Here, we conclude that the tip given by the caller provided information describing future behavior and appearance of the defendants. For example, the tip predicted that they would be returning to Ocean City, through Atlantic City. Indeed this was corroborated by the officers who initially encountered defendants in a bus station in Atlantic City. Moreover, the tip gave physical descriptions of defendants, as well as descriptions of the clothes they were wearing, which were corroborated by the officers when they initially observed defendants. In fact, it was because of *779 those descriptions that the officers initially encountered defendants rather than other people who were in the bus station. Moreover, defendants arrived at the bus station within the time period they would be expected to return based upon the time they had allegedly left Ocean City. Considering the totality of these circumstances, we conclude that the officers had a reasonable articulable suspicion that defendants were engaged in criminal activity, as had been reported by the anonymous caller.
Affirmed.
NOTES
[1] We note that the United States Supreme Court recently refused to adopt a bright line rule requiring police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary. Ohio v. Robinette, 519 U.S. 33, 39-40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347, 355 (1996). In any event, here, as previously noted, while the officers may not have specifically told defendants they were free to go, they certainly told them that they did not have to accompany the officers to the patrol room, and also advised them that they need not consent to the search.